# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RYAN L. PLEW,** | ) | |
| **No. S03238,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00340-MJR** |
| | ) | |
| **DR. WILLIAMS,** | ) | |
| **DANIEL CONN, and** | ) | |
| **UNKNOWN PARTIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Ryan L. Plew, an inmate in the custody of the Illinois Department of Corrections ("IDOC") and housed at Robinson Correctional Center ("Robinson"), brings this action regarding his medical treatment while at Robinson.  Plaintiff's original complaint (Doc. 1) is before the Court, along with a proposed amended complaint (*see* Doc 5).

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility.  *Id*. at 557.   At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Cause of Action

As a preliminary matter, the Court observes that the complaint and proposed amended complaint both purport to be pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680.   Plaintiff is in state custody, not federal custody; all relevant events occurred at a state prison; and all named defendants are state actors (or contract employees working for the state).  The  FTCA is the vehicle for brining suit against the United States, in situations where a private person would be liable under state law.  *See Augustis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013).  Therefore, the FTCA is the wrong basis for Plaintiff's claims.  Instead, 42 U.S.C. § 1983 appears to be the proper basis for Plaintiff's constitutional claims.  Section 1983 is used to prosecute constitutional claims against state actors.

Rather than dismiss the complaint, the Court will *sua sponte* characterize Plaintiff's complaint as falling under Section 1983 (as well as a specific federal statute discussed below).  If Plaintiff desires to pursue any other cause of action, he will have to file an amended complaint setting forth all claims against all defendants.  *See* FED.R.CIV.P. 8 and 15; Local Rule 15.1.

**Proposed Amended Complaint**

Plaintiff filed a proposed amended complaint, which the Court construes as a motion for leave to amend and proposed pleading (*see* Doc. 5).  Although a party may amend the complaint once as a matter of right at this early stage, the proposed amended complaint consists of a cover page, several internal grievance forms, and a call pass to the healthcare unit.  Local Rule 15.1 requires that all claims against all defendants be contained in any amended pleading, as though starting from scratch.  Therefore, Plaintiff's motion to amend the complaint (Doc. 5) will be denied.  The preliminary review of the original complaint (Doc. 1) shall proceed.

**The Complaint**

The complaint specifically names Dr. Williams and Wexford Health Sources, Inc., EVP & COO Daniel Conn as defendants.  "John & Jane Doe's (et. al)), staff of all kinds with Wexford Health Sources, Inc." [sic] are also named defendants.  Although numerous individuals are named in the narrative of the complaint, for reasons discussed later, the following synopsis focuses on the allegations against specifically named defendants.

According to the complaint, in 2011, upon Plaintiff's transfer into Robinson, he was prescribed Ultram and Neurontin for back pain.  The drugs made him drowsy and he fell from his top bunk.  Consequently, Plaintiff was issued a low bunk permit in or around November 2012.   In September 2013, when the low bunk permit and prescriptions were about to expire, Plaintiff was seen by defendant Dr. Williams.  Dr. Williams said he would only refill one prescription, whichever Plaintiff chose; and, the low bunk permit would not be authorized.  Dr. Williams then dispatched Plaintiff by explaining that if Plaintiff did not like how Williams was treating him, Plaintiff could sue him.  Plaintiff takes issue with the refusal to provide both of the needed medications, and the denial of the low bunk permit.  He also contends that Dr. Williams

violated the privacy dictates of the Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. No. 104-191, 110 Stat. 1936 (1996).

In November 2013, Plaintiff was climbing up to his bunk when he experienced a sharp pain in his scrotum.  His left testicle swelled, causing him severe pain. Dr. Lochard opined that Plaintiff had a hydrocele, which would require an operation. Ibuprofen was prescribed. Dr. Williams subsequently examined Plaintiff and also diagnosed a hydrocele, for which masturbation was suggested to relieve the pressure (which Plaintiff learned was against regulations).   Dr. Williams also prescribed antibiotics, but he did not think surgery was necessary.  Plaintiff's request for a low bunk permit was also denied by Dr. Williams.  Again, Plaintiff felt Dr. Williams had violated his privacy rights under HIPAA, because the exam had been conducted with the door partially open, allowing other inmates to listen.  Williams also made a remark about Plaintiff not being able to have children due to the hydrocele, and not caring about that possible side effect.

Dissatisfied with his treatment and still in pain, Plaintiff was able to secure some information about hydroceles, which he conveyed to Dr. Williams during a follow-up exam in December 2013.   Plaintiff was also concerned about his ability to have children, so he requested a sperm count.  Although Dr. Williams refused to perform a sperm count, an ultrasound was ordered.

Still without a low bunk permit, on December 30, 2013, Plaintiff fell while getting into his bunk, hitting his head.  Plaintiff was taken to the healthcare unit, but he was still not given a low bunk permit.

Plaintiff was called back to the healthcare unit on December 31, for what he was lead to believe was a sperm count.  He had to submit to not one, but two uncomfortable urethral swabs.

After the swabs were taken, Plaintiff learned that he was being tested for sexually transmitted diseases—not a sperm count.  Plaintiff contends Dr. Williams acted "unprofessionally" when he ordered tests without Plaintiff's knowledge.   Plaintiff also views the two swabs with suspicion, intimating they were unnecessary and, perhaps, prescribed out of spite.

Plaintiff was again examined by Dr. Williams on January 15, 2014.  The ultrasound testing indicated that Plaintiff had a spermatocele—a cyst in the epididymis of his testicle, different from a hydrocele.  *See* http://www.nlm.nih.gov/medlineplus/ency/article/001283.htm (last accessed April 7, 2014).  Although Dr. Williams contended the cyst should not be painful, he asked Plaintiff if he wanted Tylenol.  Plaintiff replied that he just wanted the problem fixed (presumably by surgery), to which Dr. Williams responded that it "was not going to happen."

Plaintiff has since been examined by several doctors.  Dr. Davis noted that Plaintiff also has burst blood vessels in his eyes, causing red eyes—a condition purportedly associated with Plaintiff's bad back and spermatocele.  On a positive note, according to the complaint, Plaintiff recently received a low bunk permit.

The complaint requests that Defendant Daniel Conn, EVP & COO of Wexford Health Sources, Inc., and Director of the Illinois Department of Corrections S.A. Godinez, Warden Randy Grounds, Health Care Administrator Kerr, Director of Nursing McFarland, and "John and Jane Doe" employees of Wexford and the Department of Corrections to: review Plaintiff's medical charts and treat any medical conditions he has; treat Plaintiff's pain with either surgery or therapy, rather than merely prescribing NSAIDS and pain medication; avoid violating patients' privacy rights; act professionally; and refrain from administering urethral swabs without the patient's informed consent.  Plaintiff also seeks compensatory and punitive damages from each defendant.

<u>Discussion</u>

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into three counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.   The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:  Dr. Williams was deliberately indifferent to Plaintiff's back pain, in violation of the Eighth Amendment;**
>
> **Count 2:  Dr. Williams was deliberately indifferent to Plaintiff's spermatocele, in violation of the Eighth Amendment; and**
>
> **Count 3:  Dr. Williams violated Plaintiff's privacy rights under HIPAA.**

<u>**Daniel Conn & Unknown Parties**</u>

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation."  *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).   Consequently, the doctrine of *respondeat superior* is not applicable to Section 1983 actions.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference."  *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011).

Daniel Conn, the EVP and COO of Wexford Health Sources, Inc., is listed in the caption of the complaint, but there are no allegations of his personal involvement in the narrative portion of the complaint.  Merely naming a defendant in the caption is insufficient to state a claim.  *See*

*Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  There is insufficient personal involvement pleaded for personal liability to attach to Conn.

Neither Wexford nor its corporate officers can be held vicariously liable under the *respondeat superior* theory alone; rather, an official policy or custom must have caused the constitutional violation in order for liability to attach.  *See Woodward v. Correctional Medical Services of Illinois, Inc.,* 368 F.3d 917 (7th Cir.2004); *Maniscalco v. Simon,* 712 F.3d 1139, 1145 (7th Cir. 2013) (no *respondeat superior* liability for private corporation).[1]  In any event, the complaint contains no such allegation.  Similarly, injunctive relief is sought that would cause Wexford to implement policies and practices—theoretically making Conn a proper defendant in his official capacity—but, again, there are no actual allegations of a corporate (or IDOC) policy or practice that violated Plaintiff's constitutional rights.  Instead, Plaintiff takes issue with Dr. Williams' practices, which are not specifically tied to Wexford or the IDOC.  For these reasons no colorable claims have been pleaded against Daniel Conn and he will be dismissed without prejudice.

As already noted, many individuals are mentioned in the narrative of the complaint who are not identified as defendants.  Naming "John & Jane Doe's (et. al)), staff of all kinds with Wexford Health Sources, Inc." [sic] as defendants indicates that additional defendants' names are unknown, meaning that those who were named in the narrative but not designated as defendants are not intended to be defendants.  As currently drafted, the complaint does not make clear which allegations are meant to underlie claims against unidentified individuals.  For these reasons, only claims against Dr. Williams have been recognized and no colorable claims against

---

[1] The Seventh Circuit recently questioned whether private corporations like Wexford should be shielded from liability under the *respondeat superior* doctrine or, instead, they should face liability as a municipality would under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), but the law has not changed at this point in time.  *See Shields v. Illinois Dept. of Corrections*, __F.3d__, 2014 WL 949950, *11-12 (7th Cir. March 12, 2014).

"John & Jane Doe's (et. al)), staff of all kinds with Wexford Health Sources, Inc." [sic] have been stated and those defendants will be dismissed without prejudice.

## Counts 1 and 2

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although only notice pleading is required, when assessing whether a plausible claim has been stated in the complaint it is helpful to keep in mind that a claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno*, 414 F.3d at 653, citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). At this preliminary stage, Plaintiff's back pain and spermatocele both satisfy the objective prong of such a claim.

To satisfy the subjective component, a prisoner must demonstrate that the prison official "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653. "Deliberate indifference cannot rest on negligent actions or inactions, but must instead rest on reckless indifference to the plight of an inmate." *Cavalieri v. Shepard*, 321 F.3d 616, 626

(7th Cir. 2003).   Thus, claims about Dr. Williams' rudeness and unprofessionalism are not actionable under Section 1983 and should be considered dismissed without prejudice.

Also, a mere disagreement over the proper course of treatment is not an Eighth Amendment violation.  *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).   At first blush, Count 1 and 2 appear to revolve around mere disagreements regarding the proper course of treatment.   However, several comments purportedly made by Dr. Williams suggest that the treatment plan may have been the byproduct of spite—deliberate indifference.   Furthermore, according to the complaint several doctors indicated a different course of treatment was appropriate.   Because all allegations must be taken as true at this stage in the proceedings, the combined effect of Dr. Williams' apparent attitude toward Plaintiff, and his questioned approach, is sufficient to sustain the inference of deliberate indifference.   Therefore, Counts 1 and 2 shall proceed against Dr. Williams, but only relative how he treated or failed to treat Plaintiff's back pain and spermatocele.

## Count 3

Count 3 pertains to Dr. Williams' practice of speaking about Plaintiff's medical condition within earshot of other inmates.   Even if these allegations are true, the Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. No. 104-191, 110 Stat. 1936 (1996), does not provide for a private cause of action.   Rather, the Secretary of Health and Human Services may pursue action.  42 U.S.C. § 1320d-5(a)(1). *See also Acara v. Banks*, 470 F.3d 569, 570–72 (5th Cir. 2006); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010), cert. denied,  __ U.S. __, 131 S.Ct.1534 (2011); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n. 4 (10th Cir. 2010).   Consequently, the Court lacks subject matter

jurisdiction over this claim and Count 3 shall be dismissed with prejudice, relative to Plaintiff making such a claim.

<u>**Disposition**</u>

    **IT IS HEREBY ORDERED** that Plaintiff's motion for leave to amend the complaint (Doc. 5) is **DENIED**.

    **IT IS FURTHER ORDERED** that, for the reasons stated, any and all claims against **DANIEL CONN** and **UNKNOWN PARTIES** ("John & Jane Doe's (et. al)), staff of all kinds with Wexford Health Sources, Inc." [sic])  are **DISMISSED without prejudice**

    **IT IS FURTHER ORDERED** that **COUNT 3**, Plaintiff's HIPAA claim, is **DISMISSED with prejudice** relative to Plaintiff, for lack of subject matter jurisdiction.

    **IT IS FURTHER ORDERED** that **COUNTS 1 and 2** shall **PROCEED** as discussed against **DR. WILLIAMS**.

    The Clerk of Court shall prepare for Defendant **DR. WILLIAMS** :  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service upon Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

    If Defendant no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address.  This information shall be used only for sending the forms as

directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant **DR. WILLIAMS** is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 17, 2014**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**